Filed 8/24/22  P. v. Zamora CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| THE PEOPLE, | D079434 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. JCF004153) |
| ENRIQUE ZAMORA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Imperial County, Monica Lepe-Negrete, Judge.  Affirmed.

Charles R. Khoury, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting, Anthony Da Silva, and Kathryn Kirschbaum, Deputy Attorneys General, for Plaintiff and Respondent.

Enrique Zamora pleaded no contest to criminal threats (Pen. Code,[1] § 422, subd. (a)). Zamora also gave a *Harvey*[2] waiver regarding dismissed and unfiled charges arising from the events in this case.

Zamora later violated probation and was sentenced to a two-year term. The court held a hearing on the victim's request for restitution for damage done by Zamora. The court utilized the probation officer's report for the factual basis for restitution. At the conclusion of the hearing, the court ordered Zamora to pay victim restitution in the amount of $1,180.

Zamora appeals, challenging only the restitution order. He contends the court should not have relied on the probation report for the facts regarding damage done by him. Thus, Zamora argues there is no factual basis for the restitution order.

We will reject Zamora's arguments. In the change of plea, Zamora stipulated to the police report as the factual basis for the plea and gave a *Harvey* waiver. We will find substantial evidence supports the award of restitution. The trial court did not abuse its discretion.

## STATEMENT OF FACTS

The factual basis of the no contest plea is set forth in the probation officer's report. The report was also used as the basis of the restitution order. The respondent has included an accurate summary of the facts. We will adopt it for convenience.

"[Zamora] stipulated to the facts contained in the police report, which is not included in the record, as the factual basis for his plea of no contest to

---

[1] All further statutory references are to the Penal Code.

[2] *People v. Harvey* (1979) 25 Cal.3d 754 (*Harvey*).

making criminal threats. The statement of facts is derived from the amended probation report as follows:

"On August 4, 2020, a Brawley police officer responded to a residence regarding a call of vandalism and threat to burn down the residence. The officer contacted P.R., who said she had been receiving threatening text messages from [Zamora], who was her ex-boyfriend. P.R. stated she was fearful of repercussions for ending her relationship with [Zamora] two weeks prior. P.R. stated that [Zamora] sent her a text message at around 10:00 p.m. indicating that he intended to break the windows of her pickup truck because she would not respond to his text messages. The text message stated, 'It's over for you bitch.'

"P.R. told the police officer that she had ongoing issues with [Zamora] since ending the relationship. She explained that [Zamora] used a cellular phone application to generate false phone numbers to avoid the 'block number' feature on her phone. P.R. showed the officer a text message from [Zamora] containing a video of a woman being decapitated, and followed by a typed message stating: 'This is how hinas like u and my ex deserve once you start smutting people up on fake false or made up shit and it will happen.'

"The police officer assessed the damage sustained to P.R.'s vehicle. The driver's side window was shattered and a small hole at the base was consistent with a BB gun shot. The passenger-side rear window was also damaged. At that time, P.R. estimated the damage to her vehicle was approximately $250.

"Brawley Police officers were unable to locate [Zamora]. Accordingly, the responding officer completed a 'pick up and hold' order for [Zamora] for making criminal threats and stalking.

"On June 16, 2021, [Zamora] sent threatening messages to P.R., insinuating an intent to commit an act of violence against her. A Brawley police officer went to P.R.'s home and documented the threatening text message as well the shattered windows to her vehicle caused by [Zamora]'s vandalism.

"On June 16, 2021, P.R. spoke with a probation officer. She said [Zamora] had harassed her for some time and she just wanted [Zamora] to leave her alone. P.R. explained that [Zamora] stopped contacting her two months prior, but then resumed text messaging and contacting her through social media the previous week. The probation officer saw a message stating: 'I'm not going to prison, let's be friends, and can we talk?' P.R. said that [Zamora] recently attempted to contact her through her juvenile daughter. P.R. reiterated that she wanted [Zamora] to stop contacting her and she desired for [Zamora] to say away from her and her family.

"P.R. told the probation officer that [Zamora] vandalized her vehicles multiple times by shattering windows and slashing tires, which she paid out of pocket for repairs. P.R. said she repaired the windows of two vehicles on four occasions, and replaced the tires slashed by [Zamora]. P.R. stated that she had to install security cameras because [Zamora]'s actions increased in aggressiveness and frequency. P.R. recounted an incident where she parked her truck at friend's house to avoid further damages by [Zamora]; however, [Zamora] mistakenly shattered her neighbor's truck windows. A camera captured [Zamora] committing the act and P.R. paid for the repairs to her neighbor's truck. P.R. told the probation officer that she was interested in submitting a restitution claim for the damages that [Zamora] caused to her property.

4

"On June 17, 2021, a probation officer spoke with P.R. about the incident as well as her restitution claim. P.R. recounted how, during the two months after she ended her romantic relationship with [Zamora], he vandalized her vehicles multiple times. P.R. said she was tired of repairing her vehicles, so she began parking them at a friend's house. P.R. stated that, on one occasion, [Zamora] destroyed the windows of her neighbor's pickup truck, which bore a similar resemblance to her own truck. P.R. felt responsible for [Zamora]'s actions and paid $400 out of pocket to repair the windows of the neighbor's truck. P.R. said that within the two-month period, she replaced the windows to her own trucks on four occasions, paid $400 for the repairs to the neighbor's pick-up truck, and purchased two tires to replace those that [Zamora] slashed or destroyed. P.R. advised the probation officer that the cost for all of these repairs totaled $1,180. The probation officer recommended that the court order $1,180 in restitution payable to P.R."

DISCUSSION

At the restitution hearing, defense counsel argued there was no evidence to show Zamora committed all of the acts of vandalism, and there was no corroboration of the amounts of the victim's repair costs. Counsel further argued the vandalism conviction was a misdemeanor count involving alleged destruction of property valued at less than $400.

The court rejected the defense arguments and found:

> "[THE COURT]: "The Court will find at this time that the prima facie evidence of loss, as to the victim's loss, specifically, because she had to pay out of pocket totaling 1,180 or $1,180, has been put before this Court. It would then, according to the law, [defense counsel], switch the burden over to you to show that the value of the damaged property is incorrect or inaccurate in a way.
>
> "Any argument as to that?

5

"[DEFENSE COUNSEL]: No, Your Honor."

## A. Legal Principles

The rights of crime victims to restitution for losses caused by criminal conduct are contained in the state Constitution and in statute. (Cal. Const. art. I, § 28, subd. (b)(13); § 1202.4.) Case law interpreting the rights of victims has recognized that trial judges have broad discretion is determining when restitution is warranted and the appropriate amounts. (*People v. Giordano* (2007) 42 Cal.4th 644, 664.) The trial court may use any reasonable means to resolve the question of restitution, including the victim's statement regarding the nature and amount of the losses. (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1542-1543.)

Where a restitution order is challenged on appeal, we review the facts under the substantial evidence standard. We evaluate the trial court's decision under the abuse of discretion standard. We do not make credibility judgments or reweigh the evidence. We draw all reasonable inferences in favor of the trial court's decision. (*People v. Baker* (2005) 126 Cal.App.4th 463, 468-469.)

Where a defendant pleads guilty (no contest) in a criminal case with a "*Harvey* waiver," the person accepts the power of the court to consider facts related to the conduct, not limited by the specific conviction. (*People v. Moser* (1996) 50 Cal.App.4th 130, 132-133.) Here, Zamora's change of plea form contained the following statement regarding the *Harvey* waiver: "The sentencing judge may consider my prior criminal history and *the entire factual background of the case*, including any unfiled, dismissed or stricken charges or allegations or cases when granting probation, *ordering restitution* or imposing sentence." (emphasis added.) Thus, the court was not limited to the $400 amount defining the misdemeanor offense.

6

B.  Analysis

Zamora presents essentially two criticisms of the restitution order. First, he contends the court should not have considered the probation report because it was not properly in evidence.  Defense counsel did not offer an objection to the use of the report at the hearing.  Rather, the claim was the evidence did not sufficiently establish his responsibility for all of the items that were damaged.  Here, the trial court properly considered the facts in the report and reasonably concluded the victim was credible and the amounts of out-of-pocket losses were reasonable.  (*People v. Baumann* (1985) 176 Cal.App.3d 67, 81.)  It is not our role to reweigh the evidence.  The victim's statements provided sufficient proof of Zamora's responsibility for, and the amount of the loss by the victim.

Zamora's second criticism is the plea was to misdemeanor vandalism (under $400); thus, he should not be responsible for any additional loss due to vandalism.  Given his *Harvey* waiver, Zamora cannot escape responsibility for the total loss caused by his criminal behavior.  The trial court did not abuse its discretion in ordering Zamora to pay victim restitution in the amount of $1,180.

## DISPOSITION

The judgment is affirmed.

                                                    HUFFMAN, Acting P. J.

WE CONCUR:


O'ROURKE, J.


DO, J.